## Salley v. Commonwealth.

March 10, 1939.

J. BRACK HOWARD, Judge.

WILLIAMS & ALLEN for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER— Affirming.

The appellant, Green Berry Salley, was tried in Wolfe Circuit Court on an indictment charging him with the murder of Nelson Rose. The trial resulted in his conviction, his punishment fixed at confinement in the penitentiary for life, and he prosecutes this appeal from the judgment entered on the verdict. Two errors are assigned: first, that the evidence is not sufficient to sustain a verdict of murder, but shows him to be guilty only of manslaughter; second, irregularities in drawing the panel which the appellant did not discover until after his trial. In order to pass on the first error assigned, it is necessary to review briefly the evidence.

Apellant, a man 29 years of age, resided with his father, Bill Salley, who was a tenant on Nelson Rose's farm and resided thereon. Raymond Rose, a seventeen year old son of Nelson Rose, had recently married a daughter of Bill Salley and a sister of appellant, and had taken up his abode in the tenant house with the Salley family. Deceased was greatly aggrieved over his

son's marriage into a tenant family and his going to their home to reside. Adjoining the tenant house where the Salley family lived was a piece of ground upon which appellant had agreed with deceased to raise a tobacco crop on shares. The deceased was to furnish the team, tools, plants and land, while appellant was to do the work for one half of the tobacco raised.

In June, while appellant and his brother-in-law, Raymond Rose, were breaking the land with a one-mule plow, deceased came on the scene and inquired why they were not using a two-mule plow. Appellant replied it was too wet to use a two-mule plow. Some words passed between deceased and appellant and deceased picked up a single-tree and started toward appellant using threatening and violent language. Appellant ran into his house and as Raymond was afraid of his father, he also ran into the house right behind Green Berry. The deceased followed them nearly to the kitchen door, but did not enter the house.

While in the house appellant picked up a shotgun and then came out on the front porch. When he reached the yard, deceased was some fifty feet from him unhitching the mule from the plow. Rose looked up at Green Berry and said, "now you've got your gun, shoot, you God damn son-of-a-bitch." Green Berry replied to this, "Mr. Rose, I don't want to shoot you, go on away and leave me be." He then started down to where the mule was and told Nelson Rose a couple of times not to unhitch the mule, saying, "Nelson don't do that." Green Berry says Nelson then picked up a single-tree, made a step toward him and he shot Nelson Rose when he was five or six steps away from him.

There is no great conflict in the evidence except as to the distance between the two men when the shot was fired. Green Berry says Nelson was five or six steps from him and had made one step towards him with a single-tree in his hand, calling him a "cowardly son-of-a-bitch," and daring him to shoot and threatening him with the single-tree. The coroner, John Tolson, and Clint Rose, a first cousin of deceased, testified the distance from where the empty shell from Green Berry's gun was found on the ground, to the blood spot on the ground near the plow, was fifty feet. Raymond Rose also testified the distance between his father and appellant at the time of the shooting was about fifty feet,

otherwise, his testimony differs but little from that of Green Berry. However, Raymond in his testimony did not mention his father picking up a single-tree and advancing one step toward Green Berry at the time Green Berry told him not to unhitch the mule and shot him.

Appellant does not contend he should have been acquitted on the ground of self-defense, but that the verdict finding him guilty of murder is palpably against the evidence, which is only sufficient to support a conviction for manslaughter. The facts in this case are quite different from those in Young v. Com., 260 Ky. 38, 83 S. W. (2d) 858, and McHargue v. Com., 231 Ky. 82, 21 S. W. (2d) 115, relied upon by appellant to show the evidence in the case at bar is not sufficient to support the verdict finding him guilty of murder, although it would support a manslaughter verdict. In those cases we did say that evidence which would uphold a verdict for manslaughter may be palpably against a verdict finding accused guilty of murder. But the facts in the Young and McHargue cases are not similar to those in Green Berry's case. In the Young case, the deceased struck the appellant in the face with his pistol and his pistol fired when he did so, thereupon Young shot deceased four times and killed him. Obviously, such evidence would not support a verdict for wilful murder. In the McHargue case, appellant saw deceased standing over his prostrate and bleeding brother whom deceased had struck on the head with a shovel, whereupon he shot deceased. We held there that while appellant did not act in self-defense, yet there was provocation which excited human passion beyond control, and such provocation as confronted defendant reduced his crime from murder to manslaughter.

But we are not prepared to say that when Nelson Rose applied insulting epithets to Green Berry and dared him to shoot, and at a distance of fifty feet he picked up a single-tree and made one step in his direction, that this gave Green Berry some excuse for shooting him, or that it was sufficient to reduce his crime from murder to manslaughter. The previous difficulty between these men was over. Nelson had left Green Berry's home and had gone down to unhitch the mule when Green Berry appeared in his yard with a gun and told him not to do so. Green Berry was then in no danger and the fact that Nelson called him vile names was no excuse for Green Berry to take his life. One reading

this record is strongly impressed that the reason Green Berry shot Nelson was no other than that Nelson unhitched the mule. The jury may have had this conception of the evidence; but however that may be, the function of weighing the evidence and finding the facts is imposed on the jury. It was reasonable in this case for the jury to find appellant guilty of murder rather than guilty of manslaughter, therefore the verdict is not palpably against the evidence. See Shepherd v. Com., 236 Ky. 290, 291, 33 S. W. (2d) 4, wherein many authorities are collated.

Appellant contends that the judgment should be reversed because the jury wheel was found unlocked under the judge's stand in the circuit court room in July 1938, before his trial in September. He contends Smith v. Com., 108 Ky. 53, 55 S. W. 718, 21 Ky. Law Rep. 1470, holds that section 2245, Kentucky Statutes, makes it mandatory on the circuit judge to keep in his possession the key to the jury wheel. The Smith case does so hold, but it was not reversed because the circuit judge left the key to the jury wheel with the circuit court clerk, but because of erroneous instructions, as is pointed out in Curtis v. Com., 110 Ky. 845, 62 S. W. 886, 23 Ky. Law Rep. 267, wherein the Smith case is discussed.

Upon discovering the jury wheel in its unlocked condition, the circuit court clerk had it locked and gave the key to the county court clerk. The circuit court clerk locked the wheel itself in the vault in his own office and immediately reported the facts to the judge. When the court convened on September 12, 1938, the circuit judge assembled the jury commissioners and delivered the jury wheel to them with instructions to empty it and refill the wheel, which the jury commissioners did. Appellant's trial was on September 17, 1938, therefore the court's action in reassembling the jury commissioners who filled the wheel from which the panel trying appellant was drawn cured any irregularities in the wheel remaining unlocked. Or, if the panel trying appellant was not drawn from the wheel after it was refilled but had been drawn at the previous term of court, there is nothing in the record to show the wheel had been in an unlocked condition before the jury was drawn at the preceding term to serve at the September 1938 term.

We had this same question before us in Terrill v.

334

Com., 277 Ky. 155, 126 S. W. (2d) 438, decided Mar. 3, 1939. Terrill was tried in the Wolfe Circuit Court, September 19, 1939, just two days after appellant's trial, and we held there that any irregularities in the jury wheel remaining unlocked was cured by the court's action in reassembling the jury commissioners and in refilling the jury wheel from which the panel tendered Terrill was drawn.

Perceiving no error in the record, the judgment is affirmed.